USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 02/13/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
MARY HEINRICH, AS EXECUTOR OF THE            :
ESTATE OF CATHERINE BUTLER A/K/A             :
CATHERINE BUTLER MUZIO A/K/A                 :
CATHERINE T. BUTLER MUZIO; MARY              :
HEINRICH, AS TRUSTEE FOR THE                 :     21-CV-10657 (VEC)
CATHERINE BUTLER MUZIO LIVING                :
TRUST; MARY HEINRICH, AS TRUSTEE             :     OPINION AND ORDER
FOR THE LEONARD MUZIO LIVING TRUST;          :
and MAY HEINRICH, IN HER INDIVIDUAL          :
CAPACITY,                                    :
                                  Plaintiffs, :
                  -against-                  :
                                             :
MALAYENE DEAN, CHARLES YASSIM A/K/A :
CHARLES YASSIN, MORGAN STANLEY               :
BARNEY, LLC, HORACE M. BARKER,               :
CITIBANK N.A. and JOHN DOES 1-10,            :
                                             :
                                  Defendants. :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

This case arises from a home caretaker's alleged scheme to defraud an ailing, and now deceased, widow by manipulating her into granting a power of attorney and by stealing money from her. Plaintiffs bring a civil Racketeer Influenced and Corrupt Organizations Act ("RICO") claim, as well as state law claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, fraud and deceit, conversion, gross negligence, aiding and abetting fraud, unjust enrichment, and constructive trust. *See generally* Compl., Dkt. 3.[1] Defendants Malayene Dean ("Dean") and Charles Yassim ("Yassim") moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Defs. Not. of Mot., Dkt. 65. For the following reasons, their motion is GRANTED and the case is DISMISSED.

---

[1] Plaintiffs withdrew their claims for defamation and intentional interference with prospective economic advantage without prejudice. *See* Stipulation, Dkt. 72.

## BACKGROUND[2]

Plaintiff Mary Heinrich ("Heinrich") is the Trustee for and beneficiary of two trusts (the "Trusts" or "Trust Accounts") that belonged to her late aunt, Catherine Butler Muzio ("Muzio"). Compl. ¶¶ 2, 11.[3]  Heinrich is also the executor of her aunt's estate. *Id.* ¶ 11.

Dean was Muzio's next-door neighbor and caregiver, *id.* ¶ 12, and Yassim allegedly was Dean's co-conspirator, *id.* ¶ 13.  Defendant Morgan Stanley Smith Barney, LLC ("Morgan Stanley") is the brokerage firm that held the Trust Accounts. *Id.* ¶¶ 14, 32.  Defendant Horace Barker ("Barker") is a Morgan Stanley employee who had primary responsibility for managing the Trusts. *Id.* ¶ 15.  Defendant Citibank, N.A. ("Citibank") is the bank at which Muzio maintained a variety of accounts. *Id.* ¶¶ 16, 31, 46.[4]

Beginning in or about 2014, Dean began providing home care to Muzio, who was elderly. *Id.* ¶¶ 1, 3, 23.  On or about September 17, 2015, Dean and Yassim took Muzio to her lawyer's office and requested a Power of Attorney (the "POA") to appoint Dean, rather than Heinrich, as Muzio's agent, and to name Heinrich as Muzio's successor agent instead of her primary agent. *Id.* ¶ 24; *see also* POA, Dkt. 3-1, at 5.[5]

---

[2] For the purposes of this motion, the Court treats the facts alleged in the Complaint as true.

[3] The two Trusts are the Catherine Butler Muzio Living Trust and the Leonard Muzio Living Trust.  *See* Compl., Dkt. 3, at 1.

[4] Plaintiffs agreed to pursue their claims against Morgan Stanley, Barker, and Citibank through arbitration. *See* Orders, Dkts. 60, 69.  This case has, therefore, been stayed with respect to those Defendants. *Id.*

[5] The Complaint does not allege when Heinrich had been appointed as Muzio's agent.  The POA attached to the Complaint was not executed by Muzio, and the Complaint also does not allege when Muzio executed the POA. *See* POA, Dkt. 3-1, at 6.

Over the next few years, Dean ingratiated herself with Muzio, continued to "insert herself" into Muzio's daily life, and to build trust with Heinrich.  Compl. ¶ 26.  Dean eventually began to isolate Muzio from visitors, hindering Muzio's contacts with family.  Id. ¶ 27.[6]

At an unspecified point in time, Barker, who had primary responsibility for managing the Trusts at Morgan Stanley, allowed Yassim to become the "online electronic contact person" for the Trust Accounts, using Yassim's email address and telephone number as contact points for the accounts.  Id. ¶¶ 15, 32, 40.  Yassim also became the electronic contact for Muzio's Discover and American Express credit card accounts.  Id. ¶ 41.

Between 2014 and 2020, Dean and Yassim electronically transferred funds from the Trust Accounts to Muzio's personal checking account at Citibank, and then transferred funds from the checking account to themselves.  Id. ¶¶ 38–39, 42.  Plaintiffs have identified approximately $600,000 in allegedly unauthorized withdrawals from the two Trusts between 2014 and 2020.  Id. ¶ 38.

Dean and Yassim also transferred other of Muzio's assets to her Citibank checking account and then accessed the assets for their own benefit.  Id. ¶ 42.  Transferred assets include proceeds from a life insurance policy, id. ¶ 43, an Allstate annuity, id. ¶ 44, three Apple bank accounts, id. ¶¶ 45, 211, another Citibank account, id. ¶ 46, and a certificate of deposit, id.  Those transfers cumulatively amounted to approximately $350,000.

Dean and Yassim wrote checks to themselves from Muzio's Citibank checking account through "various means," including by exerting "undue influence" over Muzio, by obtaining her signature on blank checks, by forging her signature, and by using the POA to pay gifts to

---

[6] Muzio's isolation was exacerbated during the COVID-19 pandemic, when it became unsafe for her to receive visitors.  Compl. ¶ 29.

3

themselves. *Id.* ¶ 42. After Muzio's death, Heinrich found in Muzio's home discarded pre-signed checks; twenty-seven check stubs with descriptions such as "Bonus," "Vacation," "Birthday," and "Gift" totaling $50,800; and thirteen checks that had been cashed that were noted as "Gifts" totaling $187,350. *Id.* ¶¶ 48–49. Between January 4, 2020 and March 20, 2021, at least sixty-eight checks totaling $82,400 were written to Yassim on Muzio's Citibank checking account. *Id.* ¶ 52. Between February 15, 2020 and January 23, 2021, twenty checks totaling $65,100 were written to Dean on Muzio's Citibank checking account, purportedly as compensation for her services. *Id.* ¶¶ 50–51. According to Plaintiffs, these amounts reflect a "grossly inflated rate" for Dean's services. *Id.* ¶ 51.

In addition to the funds paid directly to Dean and Yassim from Muzio's account, almost $150,000 in expenses for items like liquor, restaurant meals, and department store purchases were made using Muzio's Discover and American Express credit cards from 2013 through 2021. *Id.* ¶¶ 55–56. According to the Complaint, those purchases were for the benefit of Dean and Yassim. *Id.*

This alleged scheme began to unravel on February 12, 2021, about one month before Muzio died, when Dean asked Heinrich to transfer funds from one of the Trusts to Muzio's checking account because her money was "running out." *Id.* ¶ 31. The request struck Heinrich as odd because Muzio did not ordinarily require additional transfers to cover her expenses. *Id.* ¶¶ 31–32.

Heinrich contacted Barker at Morgan Stanley, who said that he was "unaware" of her trustee status, that he took instructions regarding the Trust Accounts from Yassim and Muzio, and that the Trust Accounts were "on hold" for reasons he did not explain. *Id.* ¶¶ 32–35.

4

Upon reviewing statements for the Trust Accounts, Heinrich discovered the unauthorized withdrawals discussed above. *Id.* ¶ 38.

Muzio "did not have the capacity" to conduct electronic money transfers or to use a computer for "many years" before her death, was "largely non-verbal" during the last year of her life, and "appeared" to have dementia when she died at the age of ninety-four on March 20, 2021. *Id.* ¶¶ 8, 30, 39.

After Muzio died, Dean and Yassim interfered with the sale of Muzio's house by "scaring off" potential buyers through "menacing behavior" and false statements regarding the property. *Id.* ¶ 78.

Plaintiffs commenced this action on December 13, 2021. *See generally* Compl. Plaintiffs allege that Dean and Yassim acted as an association-in-fact enterprise from 2014 through the present to commit criminal acts including mail fraud, wire fraud, and bank fraud. *Id.* ¶¶ 77–78. The purpose of the enterprise was to induce Muzio, Heinrich, and other family members to believe that Dean was a trusted caregiver so the enterprise could exploit Muzio and convert Plaintiffs' property for their own benefit. *Id.* ¶ 79.

On February 2, 2022, Dean and Yassim stipulated to an injunction prohibiting their disposition of certain assets pending further instruction from the Court. *See* Stipulation & Order, Dkt. 37.

## DISCUSSION

### I. Legal Standard

"To survive a motion to dismiss under [Rule] 12(b)(6), a complaint must allege sufficient facts, taken as true, to state a plausible claim for relief." *Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "[A]

5

complaint does not need to contain detailed or elaborate factual allegations, but only allegations sufficient to raise an entitlement to relief above the speculative level." *Keiler v. Harlequin Enters., Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014) (citation omitted). The Court is not required, however, to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Moreover, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555). When considering a Rule 12(b)(6) motion to dismiss, the Court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the light most favorable to the plaintiff. *See Gibbons v. Malone*, 703 F.3d 595, 599 (2d Cir. 2013).

The civil RICO statute makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. §§ 1964(c); 1962(c).

To state a civil RICO claim, a plaintiff must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains [an] interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123–24 (2d Cir. 2018) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)).[7]

---

[7] Predicate acts that sound in fraud or mistake must be pled with particularity as required by Federal Rule of Civil Procedure 9(b); other elements of a RICO claim, including the existence of an "enterprise," are subject only to the "short and plain statement" standard of Federal Rule of Civil Procedure 8(a). *D. Penguin Bros. Ltd. v. City Nat. Bank*, 587 F. App'x 663, 666 (2d Cir. 2014) (summary order) (citing *McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992)).

"The heart of any civil RICO claim is the enterprise. There can be no RICO violation without one." *D. Penguin Bros. v. City Nat'l Bank*, No. 13-CV-0041 (TPG), 2014 WL 982859, at *4 (S.D.N.Y. Mar. 11, 2014), *aff'd*, 587 F. App'x 663 (2d Cir. 2014) (summary order). A civil RICO "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

If, as in this case, a RICO plaintiff alleges that an "association in fact" existed among defendants, the enterprise "must have at least three structural features: [1] a purpose, [2] relationships among those associated with the enterprise, and [3] longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 945 (2009) (quoting *United States v. Turkette*, 452 U.S. 576, 583, (1981)). For an association of individuals to constitute an enterprise, they must "share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (quoting *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004)). Courts in the Second Circuit look to the "hierarchy, organization, and activities" of an association-in-fact to determine whether its members function as a unit. *Piscitello v. Giannetti*, No. 15-CV-3989 (SJF), 2016 WL 1559156, at *6 (E.D.N.Y. Apr. 18, 2016) (quoting *United States v. Coonan*, 938 F.2d 1553, 1560–61 (2d Cir. 1991)).

A RICO enterprise must be "distinct from the person conducting the affairs of the enterprise." *First Capital Asset Mgmt., Inc.*, 385 F.3d at 173; *see also Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001) (concluding that a RICO "enterprise" is "not simply the same 'person'" accused of racketeering "referred to by a different name"). The

7

enterprise must also exist "separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583.

> II. **Plaintiffs Fail to State a Civil RICO Claim Because They Fail Adequately to Allege an Enterprise**

Plaintiffs fail adequately to allege the *sine qua non* of a civil RICO claim: that there was an enterprise that was engaged in racketeering activity.[8]

The Complaint alleges that Dean and Yassim "acted as an association in fact to commit criminal acts" and that their enterprise "constitutes an ongoing organization whose members functioned as a continued unit for a common purpose" of exploiting Muzio and her family, Compl. ¶¶ 77–78, but it does not allege any facts substantiating those conclusory allegations. Plaintiffs assert for the first time in their memorandum of law that Dean and Yassim "created an enterprise in the form of an eldercare service which operated as a cover for their fraud and thievery. . . ." Pls. Mem., Dkt. 73, at 16–17. Dean's purported role in the enterprise was to exploit her position as Muzio's caregiver, while Yassim's role was to gain control over Muzio's accounts by ingratiating himself to Barker. *Id.*[9]

Belatedly styling Dean and Yassim's scheme as an exploitative eldercare service, however, does not rescue Plaintiffs' Complaint. *See N.Y. Auto Ins. Plan v. All Purpose Agency & Brokerage Inc.*, No. 97-CV-3165 (KTD), 1998 WL 695869, at *4 (S.D.N.Y. Oct. 6, 1998) ("[C]ourts must be w[]ary of the putative RICO case that is really nothing more than an ordinary

---

[8] Because the Court concludes that Plaintiffs fail to allege that there was an enterprise, it does not address whether Plaintiffs have adequately alleged the other elements of a civil RICO claim.

[9] Plaintiffs argue that Barker was a "key player" in the enterprise, Pls. Mem., Dkt. 73, at 17, but the Complaint only discusses Dean and Yassim, not Barker, when describing the purported enterprise, *see* Compl. ¶¶ 76–80. The absence of allegations in the Complaint regarding Barker's purported role in the enterprise further underscores Plaintiffs' failure to meet their pleading burden.

fraud case clothed in the Emperor's trendy garb.") (internal quotation marks and citation omitted).

The gravamen of the Complaint is that Dean and Yassim defrauded Muzio of her assets to further their own interests, not the interests of a separate eldercare enterprise.  *See D. Penguin Bros. Ltd.*, 587 F. App'x at 666 (concluding that allegations that two individuals "worked together in some respects to steal plaintiffs' funds" were insufficient to allege a civil RICO enterprise because, *inter alia*, there was no plausible basis for inferring that the defendants had acted "on behalf of the *enterprise* as opposed to on behalf of [themselves] in their individual capacities, to advance their individual self-interests"); *see also Foster v. 2001 Real Estate*, No. 14-CV-9434 (RWS), 2015 WL 7587360, at *4 (S.D.N.Y. Nov. 24, 2015) (concluding that an "offhand reference to an 'Enterprise'" when alleging that the defendants "conspired together to defraud" someone was insufficient to state a civil RICO claim); *N.Y. Auto Ins. Plan*, 1998 WL 695869, at *5 (concluding that "the plaintiffs' RICO claims [were] nothing more than an attempt to extract treble damages from an ordinary fraud case").

Plaintiffs attempt to distinguish their allegations from those in *D. Penguin Bros.* and its progeny by arguing that *D. Penguin Bros.* turned on the plaintiffs' failure to allege a "plausible common purpose" for members of the enterprise.  *See* Pls. Mem. at 17–18.  Plaintiffs misrepresent the holding of the case.  The Second Circuit evaluated two separate enterprise theories, one of which primarily failed because its members lacked a conceivable common purpose, and one of which primarily failed because there was no plausible basis to infer that its members formed an ongoing organization and acted on its behalf.  *See* 587 F. App'x at 668.  Plaintiffs' enterprise theory fails because it is of the latter variety.

Assigning Dean and Yassim purported roles in the enterprise does not cure this fatal deficiency. *See Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 304 (E.D.N.Y. 2017) (concluding that "describing the roles" entities played within the purported enterprise was insufficient to allege a RICO enterprise); *Wade Park Land Holdings, LLC v. Kalikow*, 589 F. Supp. 3d 335, 375 (S.D.N.Y. 2022) (rejecting plaintiffs' argument that they "allege[d] each defendant's role in the enterprise" because their allegations were merely "conclusory").

Plaintiffs also fail to state a RICO claim because the purported eldercare "enterprise" and Dean, the only individual who allegedly engaged in eldercare, are one and the same. Plaintiffs therefore run afoul of the well-established rule that a RICO enterprise must be "distinct from the person conducting the affairs of the enterprise." *First Capital Asset Mgmt., Inc.*, 385 F.3d at 173 (citations omitted); *see also Kerik v. Tacopina*, 64 F. Supp. 3d 542, 543 (S.D.N.Y. 2014) ("Even when the plaintiff is alleging an 'association-in-fact' enterprise, the enterprise must have a distinct identity from the RICO person and consist of more than one member.") (citation omitted).

The Complaint also falls short because it does not sufficiently allege an enterprise that is "separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583. Plaintiffs allege that Dean provided eldercare services and that Yassim helped Dean defraud one particular client: Muzio. *See generally* Compl. The extent of Dean and Yassim's purported enterprise is their criminal activity with respect to Muzio, the very "pattern" of activity underlying Plaintiffs' RICO claim.[10] *See Lynn v. McCormick*, No. 17-CV-1183 (CS), 2017 WL

---

[10] In their memorandum opposing the motion to dismiss, Plaintiffs assert "upon information and belief" that, at some point in the past, Dean "secured a gift of the house at 33-69 172nd St., Queens, New York 11358, from another woman in whose life Dean had insinuated herself." Pls. Mem. at 1 n.1 (citing Dkt. 18-45). The cited document shows that the referenced property was a bequest to Dean. The deed was signed by the trustee of the Victoria Battini Revocable Living Trust on the trust's behalf. There is no indication in the document that it is the result of undue influence, and Plaintiffs provide no facts to connect the transfer of that property to their alleged eldercare RICO enterprise.

6507112, at *5 (S.D.N.Y. Dec. 18, 2017) (concluding that plaintiffs failed to allege a RICO enterprise because they merely "allege[d] that the [d]efendants came together for the purpose of engaging in the fraudulent activity that form[ed] the basis of the asserted pattern of racketeering activity," rendering the enterprise and the pattern "one and the same") (internal quotation marks and citation omitted); *Goodman by Goodman v. Bremby*, No. 16-CV-00665 (MPS), 2017 WL 4169427, at *9 (D. Conn. Sept. 20, 2017) (concluding that plaintiffs failed adequately to allege separateness between the alleged racketeering activity and the alleged enterprise because the complaint merely specified "how the defendants went about accomplishing predicate acts aimed at stealing the assets of a single victim"); *Mackin v. Auberger*, 59 F. Supp. 3d 528, 545 (W.D.N.Y. 2014) (concluding that the plaintiff failed to allege a RICO enterprise because he merely alleged that one member of the enterprise "associated with" the other member to perform criminal acts).

For those reasons, and because Plaintiffs have neither requested leave to amend nor indicated that they could amend their Complaint to correct these deficiencies, Plaintiffs' civil RICO claim is DISMISSED with prejudice. *See Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (affirming the district court's dismissal of a claim with prejudice because the plaintiff did not request leave to amend and did not indicate that she could or would provide additional allegations that would lead to a different result).

### III. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiffs' State Law Claims

A district court "may decline to exercise supplemental jurisdiction" over a related state law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

11

Because Plaintiffs' federal claim is dismissed, and the Court does not discern any extraordinary circumstances or federal policy concerns in this action, the Court declines to exercise jurisdiction over Plaintiffs' remaining state law claims. *See Krupinski v. Laborers E. Region Org. Fund*, No. 15-CV-982 (RJS), 2016 WL 5800473, at *9–10 (S.D.N.Y. Oct. 2, 2016) (noting that federal courts "usual[ly]" decline to exercise jurisdiction over state law claims if all federal claims are dismissed before trial); *Town of Mamakating, N.Y. v. Lamm*, No. 15-CV-2865 (KBF), 2015 WL 5311265, at *10 (S.D.N.Y. Sept. 11, 2015) (declining to exercise supplemental jurisdiction over plaintiffs' state law claims after dismissing their RICO claims); *Lapides v. Tarlow*, No. 01-CV-9319 (SHS), 2002 WL 31682382, at *3 (S.D.N.Y. Nov. 27, 2002) (same).

## CONCLUSION

For the foregoing reasons, Plaintiffs' RICO claim is DISMISSED with prejudice and Plaintiffs' remaining state law claims are DISMISSED without prejudice as to all Defendants.[11] Because the Court lacks subject-matter jurisdiction over this action, its Orders enjoining Dean and Yassim and staying the case pending arbitration, *see* Orders, Dkts. 37, 60, 69, are VACATED.[12]

---

[11] The Court may dismiss claims against the non-moving Defendants without prejudice. *See Win Spark Trading Co. v. Century Bus. Credit Corp.*, No. 01-CV-6605 (JSR), 2002 WL 1343763, at *2 & n.3 (S.D.N.Y. June 18, 2002) (dismissing amended complaints "in their entirety and as to all defendants" even though "only certain defendants formally moved to dismiss" because the deficiencies discussed in the opinion "appl[ied], *pari passu*, to all defendants"); *Edwards v. Jean-Baptiste*, No. 08-CV-1720 (PCD), 2009 WL 1870868, at *2 (D. Conn. June 25, 2009) ("Notwithstanding that only four of six Defendants have moved to dismiss Plaintiff's amended complaint pursuant to Fed. R. Civ. P. 12(b)(1), as this Court does not have jurisdiction over Plaintiff's claims, the case is dismissed as to all Defendants."); *cf. Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 449 (2d Cir. 2013) ("Issues relating to subject matter jurisdiction may be raised at any time, even on appeal, and even by the court *sua sponte*.") (internal quotation marks and citation omitted).

[12] *See Bakoss v. Certain Underwriters at Lloyds of London Issuing Certificate No. 0510135*, 707 F.3d 140, 142 n.4 (2d Cir. 2013) ("The [Federal Arbitration Act] does not independently confer subject-matter jurisdiction on the federal courts[. . . .]") (citation omitted); *Douce v. Origin ID TMAA 1404-236-5547*, No. 08-CV-483 (DLC), 2008 WL 2755831, at *4 (S.D.N.Y. July 14, 2008) (declining to address defendants' motion for a stay pending arbitration because it was "not yet clear whether the Court ha[d] subject matter jurisdiction" over the case).

The Clerk of Court is respectfully directed to close the open motion at Dkt. 65, to vacate the Orders at Dkts. 37, 60, and 69, and to close the case.

**SO ORDERED.**

Date: February 13, 2023
New York, New York

_____
VALERIE CAPRONI
United States District Judge